IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOHN FLYNN, JAMES BOLAND, GERALD O'MALLEY, KEN LAMBERT, GERARD SCARANO, H. J. BRAMLETT, EUGENE GEORGE, PAUL SONGER, CHARLES VELARDO, MATTHEW AQUILINE, GREGORY R. HESS, MICHAEL SCHMERBECK, VINCENT DELAZZERO, and BENJAMIN CAPP, as Trustees of, and on behalf of, the BRICKLAYERS & TROWEL TRADES INTERNATIONAL PENSION FUND<br><br>620 F Street, N.W.<br>Washington, DC 20004<br>(202) 783-3788,<br><br>and<br><br>JIM ALLEN, MATTHEW AQUILINE, LON BEST, JAMES BOLAND, TED CHAMP, RAYMOND CHAPMAN, VINCENT DELAZZERO, BRUCE DEXTER, JOHN FLYNN, EUGENE GEORGE, GREGORY HESS, FRED KINATEDER, DAN KWIATKOWSKI, KEN LAMBERT, SANTO LANZAFAME, DICK LAUBER, WILLIAM MCCONNELL, EDWARD NAVARRO, GERALD O'MALLEY, JOHN PHILLIPS, CHARLES RASO, MARK ROSE, KEVIN RYAN, GERARD SCARANO, MICHAEL SCHMERBECK, PAUL SONGER, JOSEPH SPERANZA, and FRED VAUTOUR as Trustees of, and on behalf of, the INTERNATIONAL MASONRY INSTITUTE<br><br>620 F Street, N.W.<br>Washington, DC 20004<br>(202) 783-3788,<br><br><br>Plaintiffs,<br><br>v.<br><br>MCCORMICK TILE, LLC<br>469 Toms Fork<br>Alum Creek, WV 25003,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>Case: 1:07-cv-00625<br>)<br>Assigned to: Huvelle Ellen S.<br>)<br>Assign Date: 4/3/2007<br>)<br>Description: Flynn v.<br>)         McCormick Tile LLC<br>)<br>)<br>)<br>)<br>)<br>) |

2233330.02

## AMENDED COMPLAINT

Plaintiffs, by their attorneys, DICKSTEIN SHAPIRO LLP, complaining of the Defendant, allege as follows:

## CAUSE OF ACTION
### Jurisdiction and Venue

1. This is an action brought by the fiduciaries of the Bricklayers & Trowel Trades International Pension Fund ("IPF" or "Fund") and the fiduciaries of the International Masonry Institute ("IMI") to enforce the terms of the Plan and Trust Agreements adopted by the IPF and IMI, and the provisions of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"). This action arises under the laws of the United States, specifically Section 502(a)(3), 502(g)(2), and 515 of ERISA, 29 U.S.C. §§ 1132(a)(3), 1132(g)(2), 1145. Pursuant to Section 502(e)(1) of ERISA, 29 U.S.C. § 1132(e)(1), jurisdiction is therefore conferred on this Court as to the claims brought on behalf of the IPF and IMI.

2. The IPF and IMI are administered in the District of Columbia. Venue for the claims asserted by the IPF and IMI is conferred on this Court pursuant to Section 502(e)(2) of ERISA, 29 U.S.C. § 1132(e)(2), which provides:

> (2) Where an action under this subchapter is brought in a district court of the United States, it may be brought in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found, and process may be served in any other district where a defendant resides or may be found.

### Parties

3. Plaintiffs, John Flynn, James Boland, Gerald O'Malley, Ken Lambert, Gerard Scarano, H. J. Bramlett, Eugene George, Paul Songer, Charles Velardo, Matthew Aquiline, Gregory R. Hess, Michael Schmerbeck, Vincent DeLazzero and Benjamin Capp, are Trustees of,

2

and sue on behalf of, the IPF. The IPF is an "employee benefit plan" within the meaning of Section 3(3) of ERISA, 29 U.S.C. § 1002(3), and is a "multiemployer plan" within the meaning of Section 3(37) of ERISA, 29 U.S.C. § 1002(37). The IPF trustees bring this action on behalf of, and for the benefit of, the beneficiaries of the IPF in their respective capacities as fiduciaries.

4.      The IPF is also authorized to effect collections on behalf of the IMI, pursuant to a written Assignment of Claims and the *Collection Procedures of the Central Collection Unit of the Bricklayers and Allied Craftworkers* ("Collection Procedures").

5.      Plaintiffs, Jim Allen, Matthew Aquiline, Lon Best, James Boland, Ted Champ, Raymond Chapman, Vincent Delazzero, Bruce Dexter, John Flynn, Eugene George, Gregory Hess, Fred Kinateder, Dan Kwiatkowski, Ken Lambert, Santo Lanzafame, Dick Lauber, William McConnell, Edward Navarro, Gerald O'Malley, John Phllips, Charles Raso, Mark Rose, Kevin Ryan, Gerard Scarano, Michael Schmerbeck, Paul Songer, Joseph Speranza and Fred Vautour, are Trustees of, and sue on behalf of the IMI. The IMI is an "employee benefit plan" within the meaning of Section 3(3) of ERISA, 29 U.S.C. § 1002(3), and is a "multiemployer plan" within the meaning of Section 3(37) of ERISA, 29 U.S.C. § 1002(37). The IMI trustees bring this action on behalf of, and for the benefit of, the beneficiaries of the IMI in their respective capacities as fiduciaries.

6.      Defendant, McCormick Tile, LLC ("McCormick Tile" or "Defendant") is, and at all times hereinafter mentioned was, a company maintaining offices and conducting business in the state of West Virginia.

7.      Defendant employs or has employed members of the International Union of Bricklayers and Allied Craftsmen and its affiliated local unions ("Union").

3

2233330.02

### Violation Charged

8.     McCormick Tile acting through its authorized agents or officers, executed a collective bargaining agreement with the Union.  The collective bargaining agreement is annexed hereto as Exhibit A and is hereinafter referred to as the "Agreement."

9.     Pursuant to the Agreement, Defendant agreed to make certain payments to the IPF and IMI on behalf of covered employees of Defendant.

10.    Having submitted some contributions, Defendant has demonstrated an awareness of the obligation to make those payments.

11.    Defendant failed to properly submit reports and contributions to the IPF for work performed during the months of December 2006 through February 2007.  Based on information obtained from Local Union 9 WV ("Local 9 WV"), the IPF determined the number of hours worked by Defendant for the months of December 2005 and March 2006 through July 2006.

12.    By multiplying the applicable rate per hour payable by Defendant, Plaintiffs have determined that the total of contributions due the IPF and IMI by Defendant for work performed during the months of December 2005, and March 2006 through July 2006 in Local 9 WV amounts to $14,313.15.

13.    Under the terms of the Plan and Trust Agreements adopted by the IPF and IMI, interest in the amount of $1,949.59 calculated from the Due Date at the rate of 15 percent per annum and liquidated damages in the amount of $2,862.63 at the rate of 20 percent, have been assessed on such delinquent contributions determined due for work performed during the months of December 2005, and March 2006 through July 2006.

2233330.02

14.    Plaintiffs have brought this action in faithful performance of the fiduciary duties imposed upon them under Section 404(a)(1) of ERISA, 29 U.S.C. § 1104(a)(1).  Plaintiffs have been, and are, incurring additional attorney's fees as a direct result of Defendant's failure to make contributions in accordance with the terms and conditions of the Agreement.

WHEREFORE, Plaintiffs pray for judgment against Defendant as follows:

1.  For the total amount of $19,475.37, which is constituted as follows:

a.  For unpaid contributions in the amount of $14,313.15 payable to the IPF and IMI for the time period December 2005, and March 2006 through July 2006, plus any and all additional amounts found to be due and owing through the date of judgment (ERISA  Section 502(g)(2)(A); Collection Procedures);

b.  For interest in the amount of $1,949.59 assessed on such unpaid contributions, calculated at 15 percent per annum from the Due Date (ERISA Section 502(g)(2)(B); Collection Procedures);

c.  For liquidated damages in the amount of $2,862.63, assessed on such unpaid contributions, calculated at 20 percent (ERISA Section 502(g)(2)(C)(ii); Collection Procedures);

d.  For the costs of filing this action in the amount of $350.00 (ERISA Section 502(g)(2)(D));

2.  In the amount of Five Thousand Dollars ($5,000.00), and such additional amounts as may be incurred, representing attorney's fees and costs of this action (ERISA Section 502(g)(2)(D)).

3.  That Defendant be directed to comply with its obligations to submit all required reports and to make all contributions due and owing to the IPF and IMI, and to pay the costs and disbursements of this action.

2233330.02

4.   Such other relief as this Court deems appropriate, including judgment for any contributions and interest thereon that may accrue subsequent to the filing of this Amended Complaint, as well as any resulting statutory damages thereon under ERISA.

Dated: July __18__, 2007

By:_____
Ira R. Mitzner, DC Bar No. 184564
DICKSTEIN SHAPIRO  LLP
1825 Eye Street, NW
Washington, DC  20006
(202) 420-2200

Attorneys for Plaintiffs

6

EXHIBIT A



RECEIVED SEP 1 6 1993

WV 9314

CONSTRUCTION
EMPLOYERS
ASSOCIATION
of NORTH CENTRAL
WEST VIRGINIA

# 1993

# 1996

# AGREEMENT

B.A.C. DISTRICT COUNCIL OF WV
BRICKLAYERS/CEMENT MASONS
LOCAL UNION NO. 15
OF FAIRMONT, WEST VIRGINIA
I.U.B.A.C.

Effective June 1, 1993 thru May 31, 1996

40

# A G R E E M E N T

## 1993 - 1996

### AGREEMENT
### Between

## CONSTRUCTION EMPLOYERS ASSOCIATION
## OF NORTH CENTRAL WEST VIRGINIA, INC.

### and

## B.A.C. DISTRICT COUNCIL OF WV
## BRICKLAYERS/CEMENT MASONS
## LOCAL UNION NO. 15
## OF FAIRMONT, WEST VIRGINIA

### I.U.B.A.C.

### EFFECTIVE DATES

### JUNE 1, 1993
### THROUGH
### MAY 31, 1996

# I N D E X

PREAMBLE . . . . . . . . . . . .    1

ARTICLE I
    Jurisdictional Area . . . . .    4
ARTICLE II
    Recognition . . . . . . . . .    4
ARTICLE III
    Union Security . . . . . . . .    5
ARTICLE IV
    Work Jurisdiction - Masonry .    5
ARTICLE V
    Subcontract . . . . . . . . .    6
ARTICLE VI
    Management . . . . . . . . . .    7
ARTICLE VII
    Bonding . . . . . . . . . . .    7
ARTICLE VIII
    Production . . . . . . . . . .    8
ARTICLE IX
    Pre-Job Conference . . . . . .    8
ARTICLE X
    Jurisdictional Disputes . . .    9
ARTICLE XI
    Grievance and Arbitration . .    10
ARTICLE XII
    No Strike - No Lockout . . . .    13
ARTICLE XIII
    Wages/Fringes - Premium Pay
    Apprentices - Hot Work
    Shift Work . . . . . . . . . .    14
Section 1.   Wages and Fringe Rates   14
Section 2.   Industrial. . . . . .    15
Section 3.   Shift Work . . . . .    19
ARTICLE XIV
    Apprentices . . . . . . . . .    20
Section 1.   Apprentice Rate and
             Requirements . . . .    20
Section 2.   Apprentice Program .    21
ARTICLE XV
    Fringe Benefit Funds . . . . .    22

Section 1.   Health and Welfare Fund22
Section 2.   Pension Fund . . . .   23
Section 3.   Union Dues Check-Off   26
Section 4.   WV Building Trades
             Council Assessment  .  27
Section 5    ACT Foundation . . .   27
ARTICLE XVI
      Contributions to Funds . . . .  28
ARTICLE XVII
      Increased Fund Contributions
      From Base Pay . . . . . . .   29
ARTICLE XVIII
      Hours of Work - Payroll Period -
      Reporting Pay - Holidays - Coffee
      Break - Temperature and Shanty
      Facilities . . . . . . . . .   29
Section 1.   Hours of Work & Overtime,
             Lunch Period . . . .   29
Section 2.   Payroll Period and
             Payday . . . . . . .   32
Section 3.   Reporting Time and Pay 33
Section 4.   Holidays . . . . . .   35
Section 5.   Coffee Break . . . .   36
ARTICLE XIX
      Foreman  . . . . . . . . .   36
ARTICLE XX
      Steward  . . . . . . . . .   38
ARTICLE XXI
      Business Manager . . . . . .  39
ARTICLE XIII
      High and Hazardous Work
      Premium Pay - Scaffolds - Safety40
Section 1.   Scaffolding . . . . .   40
Section 2.   Stack Work . . . . .   41
Section 3.   Work in Pairs . . . .  41
Section 4.   Mortar Boards . . . .  42
ARTICLE XXIII
      Firebrick  . . . . . . . .   42
Section 1.   Wage Rate . . . . . .  42
Section 2.   Saw Work . . . . . .   42
Section 3.   Hot Work - Rate and
             Conditions  . . . . .  43

Section 4.    Shift Work  . . . . .  44
Section 5.    Work Week & Overtime  44
Section 6.    Clay Boxes  . . . . .  45
Section 7.    Transportation of Tools
              and Clothing  . . . .  45
Section 8.    Travel Pay  . . . . .  45
ARTICLE XXIV
    Union Rights - Other conditions -
    Extension of Privileges  . . .  47
Section 1.    Notification of Union  47
Section 2.    Job Accessibility
              and Heat . . . . . .  47
Section 3.    Extension of Privileges 47
Section 4.    Employment  . . . . .  47
Section 5.    Insurance and Physical
              Examinations  . . . .  48
Section 6.    Dividing Work Between
              Employees . . . . . .  48
Section 7.    Mortar, Lines, Trig Brick,
              Speedleads, Deadmen,
              Etc.  . . . . . . . .  48
Section 8.    Principles of the Trade 49
ARTICLE XXV
    Most Favored Nations Clause  .  50
ARTICLE XXVI
    Industry Advancement Fund  . .  50
ARTICLE XXVII
    Savings Clause . . . . . . . .  53
ARTICLE XXVIII
    Responsibilities of Parties  .  53
ARTICLE XXIX
    Legally Required Funds . . . .  55
ARTICLE XXX
    Substance Abuse/ADA/EEO Policy  56
ARTICLE XXXI
    Pointers, Cleaners, Caulkers .  57
ARTICLE XXXII
    Duration and Witnesseth  . . .  61
ACCEPTANCE OF AGREEMENT
    (Non-Association Employer) . .  64

# PREAMBLE

This Agreement, made and entered into on June 1, 1993, by and between the Construction Employers Association of North Central West Virginia, Inc., hereinafter referred to as the "Employer," and Local Union No. 15 of Fairmont, West Virginia of the International Union of Bricklayers and Allied Craftsmen, hereinafter referred to as the "Union."

This Agreement shall become effective June 1, 1993, by the signing thereof and shall continue in effect until midnight May 31, 1996, and will remain in effect thereafter from year to year unless notice is given in writing at least thirty (30) days prior to expiration, but not more than sixty-five (65) days, prior to May 31, 1996, by one of the parties hereto to the other of its desire not to be bound by the terms and conditions of this Agreement. It is further agreed that the first negotiating meeting must be held within reasonable notice (three weeks) of receipt of either party of the other party's desire to modify or terminate this Agreement.

The Articles of this Agreement set forth specific understandings covering wages, hours, working rules and other conditions of employment to govern the relationship of the parties hereto. It is understood that no other regulations concerning working rules coming within the area of matters subject to collective bargaining may be adopted by either party without the consent of the other

1

party, and such regulations that may be agreed to hereafter by both parties shall be set forth in writing and be made a part of this Agreement.

It is agreed and understood that the Local Union No. 15, in making this Agreement, is acting merely as agent for the employees covered by this Agreement and shall under no circumstances be liable for any strike, violation, breach or any other default under this Agreement, unless the Local Union has authorized such strike, violation or default under the Agreement by official action of the membership, having ratified the same. The Employer understands and agrees that no individual officer, representative, group of representatives, or employee of the Local Union have any power or authority to direct or call any strike, slowdown or interference on any job in breach of this Agreement. In the event of breach or default, the Business Representative of Local Union No. 15, alone, shall have the right to invoke lawful remedies on behalf of the Local Union.

It is agreed and stipulated by between the parties to this Agreement that the act of the International Union of Bricklayers and Allied Craftsmen (hereinafter called the "I.U.B.A.C.") in approving this Contract as to form and substance shall not be construed as permitting the I.U.B.A.C., its officers or agents, to become a party to this Agreement, nor is there any duty, liability or obligation imposed upon the

2

I.U.B.A.C., its officers or agents, to respect the terms and conditions of this Contract.

It is understood that the aforementioned Association acted only as agent in the negotiations of this Contract and it is agent only for those individuals, partnerships and corporations who have authorized it to so act, and in no event shall it be bound as principal or be held in any manner for any breach of this Contract by any of the Contractors for whom it is acting, or by any employee of such Contractor. It is further understood and agreed that any liabilities of the Contractors who have authorized the negotiation and execution of this Agreement shall be several and not joint.

As an afterthought to the preceding paragraphs, it is sincerely recommended and concluded that those parties not signatory to this Agreement will endeavor to abide by this Agreement and/or the legal rules and by laws of the parties signatory to this Agreement.

This Agreement entered into between the aforementioned parties is for the purpose of preventing strikes and lock-outs, and for facilitating a peaceful adjustment of any and all grievances and disputes that may arise between the Employer and employee in the Masonry Industry in the territory covered by this Agreement.

3

# ARTICLE I
## JURISDICTIONAL AREA

### BRICKLAYERS LOCAL NO. 15:

This Agreement shall be in effect in the following Counties: Barbour, Doddridge, Gilmer, Grant, Hardy, Harrison, Lewis, Marion, Monongalia, Pendleton, Pocahontas, Preston, Randolph, Taylor, Tucker, Upshur and Webster.

### CEMENT MASONS LOCAL NO. 15:

This Agreement shall be in effect in the following Counties: Grant, Hardy, Pendleton, Pocohontas and Randolph.

# ARTICLE II
## RECOGNITION

The Employer recognizes the Union as the sole and exclusive bargaining Representative of all journeyman and apprentice bricklayers, and other allied branches of the trade employed with respect to wages, hours and other terms and conditions of the employment of any and all work described herein.

It is agreed that Local Union #15, at all times during the progress of any job, shall furnish at least seventy-five (75%) percent of the bricklayers (if available) employed by the contractor, plus the odd man, if any, who shall have been residents of the area covered by this Agreement for a period of at least six (6) months preceding employment.

4

## ARTICLE III
## UNION SECURITY

All employees who are members of the Union on the effective date of this Agreement shall be required to remain members of the Union as a condition of employment during the term of this Agreement. New employees shall be required to become and remain members of the Union as a condition of employment from and after the seventh (7th) day of employment.

## ARTICLE IV
## WORK JURISDICTION - MASONRY

(a) Bricklaying masonry shall consist of the laying of brick in, under or upon any structure or form of work where brick is used, whether in the ground or over its surface, or beneath water in commercial buildings, rolling mills, iron works, blast or smelt furnaces, lime or brick kilns, in mines or fortifications, and in all underground work, such as sewers, telegraph, electric, and telephone conduits, and all pointing, cleaning and caulking walls and joints, or other work requiring the labor of a skilled person. Fireproofing, blockarching, terra cotta cutting and setting, the laying and cutting of all tile, plaster, mineral wool and cork blocks and glass masonry, or any substitute for above material. Cutting, rubbing and setting of all cut stone trimmings on brick buildings is bricklayers' work.

5

(b) Brick paving also is included bricklayers' work.

(c) All F & A blocks will be set by bricklayers and all washing down will be done by bricklayers.

(d) When installing PRECAST, PRESTRESSED, CONCRETE STONE, IMITATION STONE, or any other FABRICATED MASONRY UNITS, including PRECAST FLOOR PANELS shall be the work of bricklayers.

## ARTICLE V
## SUBCONTRACT

The Employer agrees that the wages, hours and working conditions provided for by this Agreement shall encompass the entire work covered by this Agreement, thereby applying to any subcontract let by the Employer or work generally covered by this Agreement. The Employer further agrees that he will not subcontract, assign, or transfer any portion of the general contract, as covered by this Agreement, to any subcontractor who is not willing to abide by the provisions of this Agreement. The failure of any subcontractor to abide by the wages, hours and working conditions on work sublet, assigned, or transferred by the Employer shall constitute a breach of this Article and therefore implement the use of the applicable Arbitration and Dispute Article of this Agreement. Witnesseth that; this Article is in accordance with Section 9 (a) of the National Labor Relations Act.

## ARTICLE VI
## MANAGEMENT

The Union agrees that the Employer shall have the right to manage and direct and the prerogatory privilege to administer his procedures and policies on any given project. The management of the Employer's work and business and the direction of the working force and the right to hire, suspend and relieve employees from duty because of lack of work or other reasons is vested exclusively in the Employer.

## ARTICLE VII
## BONDING

The Union shall require those Employers who have not maintained an established office in the jurisdiction of the Bricklayers/Cement Masons Local Union No. 15 for five (5) years or more or who are not previously a party to an agreement with the Bricklayers/Cement Masons Local Union No. 15 or who are delinquent or who become delinquent in payments to fringe benefit funds provided by this Agreement to procure, pay the premium for and deliver to the Union a Bond written by a responsible surety company in the sum of twenty-five thousand dollars ($25,000) plus any existing delinquencies due said fringe benefit funds guaranteeing the payment of all wages and fringe benefits due employees under this Agreement and all payments and penalties due as provided in this Agreement.

7

An Employer desiring to start work before furnishing such Bond shall make a twenty-five hundred dollar ($2,500) cash deposit with the Bricklayers/Cement Masons Local No. 15 office. His job may then proceed for a period of seven (7) days.    Thereafter,    the    twenty-five thousand dollar ($25,000) Bond must be posted before work may continue.    Any such deposit shall be refunded to the Employer upon presentation of the Bond. The above Bond and cash deposits are for the purpose of securing the payment by the Employer of all payroll and fringe benefits due employees and the Industry Advancement Fund and shall be refunded to the Employer upon completion of the work,   providing   that   all   obligations with request to payroll and fringe benefits have been paid.

## ARTICLE VIII
## PRODUCTION

There shall be no limit on production by workmen nor restrictions on the full use of tools or equipment.    There shall no be restrictions, other than may be required by safety regulations, on the number of men assigned to any crew or to any service.

Slowdowns, standby crews and featherbedding    practices    will    not    be tolerated.

8

## ARTICLE IX
## PRE-JOB CONFERENCE

There shall be a pre-job conference scheduled and held on all projects, the Employer shall notify the Building Trades Council having jurisdiction in the area where the project is located, giving project name, location and the place, date and time of the pre-job conference.

The Building Trades Council, in turn will notify all crafts to be involved in the project to be present for such conference.

Foremost among the purposes of pre-job conferences is to gather all necessary information for the Employer to make all possible work assignments to the various crafts involved, prior to the actual start of the project, thus reducing possible future jurisdictional disputes.

## ARTICLE X
## JURISDICTIONAL DISPUTES

There shall be no strikes, work stoppages, slowdowns or lockouts by reason of jurisdictional disputes. The Union agrees to take any and all steps necessary to settle such disputes.

With reference to any and all future jurisdictional disputes, the parties to this Agreement will be guided by decisions and agreements of record by national agreement between the Local Union that has jurisdiction.

9

# ARTICLE XI
## GRIEVANCE AND ARBITRATION

Section 1.    The Construction Employers Association and the Union shall each designate representatives to serve as its representatives on a Joint Arbitration Committee.    The number of representatives to serve on such committee shall be by mutual agreement between the Association and Local No. 15.

The Union agrees that it will not cause or authorize a cessation, slowdown, or picketing of the work, either in the form of a strike, sympathetic or otherwise, walkout, sit-down or slowdown, or picketing of the work, either in the form of a strike, sympathetic or otherwise, walkout, sit-down or slowdown, and the Employer agrees that there shall be no lockout because of such dispute.

Section 2.    Should any dispute arise as to the interpretation, application or claimed violation of any provision of this Contract, the dispute shall be settled in the following manner:

(a)    The Employer's designated representative and the Union Steward shall meet to discuss the dispute and attempt to render a decision within twenty-four (24) hours from the time the dispute is brought to the other party's attention.

(b)    If no agreement is reached in step (a) above, the Union's Business

10

Representative and the Employer's designated representative shall meet within twenty-four (24) hours (two days) in an effort to resolve the dispute.

(c)  If no agreement is reached in step (b) above, the Business Representative of Bricklayers/Cement Masons Local No. 15 and the Executive Director of the Construction Employers Association, or their designated representatives shall meet within twenty-four (24) hours (two days) in an effort to resolve the dispute.

(d)  If the dispute is not resolved in step (c) above, the matter shall be submitted to the Joint Arbitration Committee for determination upon the written request of either the Union or Construction Employers Association.  The Joint Arbitration Committee shall meet within forty-eight (48) hours (four days) after such request is made in an effort to resolve the dispute.

(e)  Notwithstanding the provisions of steps (a) and (d) above, if either the Employer or the Union regards a dispute to be of an emergency nature, the dispute may be submitted immediately to step (c) of the grievance procedure, without the necessity of going through steps (a) and (b).

(f)  In the event a decision is not reached by the Joint Grievance Committee within five (5) working days after having been first considered by such Joint Grievance Committee, the Union or

11

the Association may elect to submit such grievance to impartial arbitration by notifying the other party and the affected Employer in writing to that effect. After a grievance has been referred to impartial arbitration, such impartial arbitrator shall be selected from a list of seven (7) arbitrators to be furnished by the Federal Mediation and Conciliation Service or the American Arbitration Association. Said selection to be effected by the parties alternatively striking names from such list and the person whose name remains on the list after six (6) having been so stricken shall be the impartial arbitrator. Such selection of the impartial arbitrator shall be effected within five (5) days (excluding Saturdays, Sundays and Holidays) after receipt of the list from the Federal Mediation and Conciliation Service or American Arbitration Association.

Section 3. In computing the time limits under Section 2 above, Saturdays, Sundays and Holidays shall be excluded.

Section 4. The award of the Impartial Arbitrator shall be final and binding on all parties and shall be enforceable in a court of law or equity. The Impartial Arbitrator shall have authority only to interpret and apply the provisions of the contract, and he shall have no authority to add to, detract from or alter its terms.

Section 5. If Employer shall have been found by the parties in paragraph

12

(b) or (c), Section 2, the Arbitration Committee, the Arbitrator, or a court, to be in violation of this contract and shall not have taken necessary corrective action within three (3) days, excluding Saturdays, Sundays, or Holidays, following such award then the Union may strike such Employer until such time as the violation is corrected.

Section 6.    Recording instruments or devices, other than those as may be used by the Impartial Arbitrator, shall only be permitted by mutual agreement of the parties to the arbitration proceedings.    It is further agreed that any time delays and/or extensions to the arbitration proceedings shall also be by mutual agreement of the parties to such proceedings.

## ARTICLE XII
## NO STRIKE, NO LOCKOUT

Section 1.    During the term of this Agreement, each of the signatory parties agrees that there will be no strikes, work stoppages or lockouts by members of the Union or by the Employer provided, however, the Union may strike where an Employer fails to pay wages in full and on time or the Union has been advised by the administrative officer of the fringe benefit funds that an Employer is delinquent in the payment of fringe benefits.

Section 2.    This no strike, no lockout commitment is based upon the agreement by both parties to be bound by

13

the grievance and arbitration provisions
of the Agreement.

## ARTICLE XIII
## WAGES/FRINGES - PREMIUM PAY-
## APPRENTICES - HOT WORK - SHIFT WORK

Section 1.    Wage and Fringe Rates
BRICKLAYERS/CEMENT MASONS LOCAL NO. 15:
(COMMERCIAL)

| (a) | 6/1/93 | 6/1/94 | 6/1/95 |
|---|---|---|---|
| Base Rate | $19.55 | $ +.75 | $ +.50 |
| H & W | 2.50 | 2.50 | 2.50 |
| Pension | 1.50 | 1.50 | 1.50 |
| App. Fund | .17 | .17 | .17 |
| IMI | .10 | .10 | .10 |
| Ind. Fund | .10 | .10 | .10 |
| | $23.92 | $24.67 | $25.17 |

BRICKLAYERS/CEMENT MASONS LOCAL NO. 15:
(INDUSTRIAL)

| | 6/1/93 | 6/1/94 | 6/1/95 |
|---|---|---|---|
| Base Rate | $20.47 | $ +.75 | $ +.50 |
| H & W | 2.50 | 2.50 | 2.50 |
| Pension | 1.50 | 1.50 | 1.50 |
| App. Fund | .17 | .17 | .17 |
| IMI | .10 | .10 | .10 |
| Ind.Fund | .10 | .10 | .10 |
| | $24.84 | $25.59 | $26.09 |

BRICKLAYERS/CEMENT MASONS LOCAL NO. 15:
(REFRACTORY)

| | 6/1/93 | 6/1/94 | 6/1/95 |
|---|---|---|---|
| Base Rate | $20.97 | $+ .75 | $+ .50 |
| H & W | 2.50 | 2.50 | 2.50 |
| Pension | 1.50 | 1.50 | 1.50 |
| App. Fund | .17 | .17 | .17 |
| IMI | .10 | .10 | .10 |
| Ind. Fund | .10 | .10 | .10 |
| | $25.34 | $26.09 | $26.59 |

14

## DEDUCTIONS:

Union Dues Check-Off as stipulated under ARTICLE XV, Section 3, per hours paid from each employee, effective 6/1/93.

WV Building and Construction Trades Council $.05 per hour worked payroll deduction from each employee, effective 6/1/93.

Affiliated Construction Trades (ACT) Foundation $.25 per hour worked payroll deduction from each employee, effective 6/1/93.

## Section 2.  Industrial

**NOTE:**  Industrial/Refractory

The wage/fringe benefit packages as listed herein for Industrial Construction/Refractory Work shall be utilized for all maintenance, repair, replacement and renovation work to be performed within various Industrial Plants as encompassed throughout the geographical jurisdiction of Bricklayers/Cement Masons Local Union No. 15. All Industrial Construction/Refractory Work is to be performed under this Agreement and is applicable to that work that is primarily within the recognized and traditional jurisdiction of Bricklayers/Cement Masons Local Union No. 15 and shall be performed in accordance with the terms of this Agreement.

Fringe/wage benefit contributions shall be paid, as indicated above, for

15

all hours _paid_ to each employee by the Contractor under this Agreement at straight time hours worked and at two (2) times the hourly rate for overtime hours worked, and hours shall include reporting hours paid.

The Union may divert any portion of their hourly wages to their Health and Welfare Fund, Pension Fund, or Union Working Dues, so long as such diversion does not change the total wage package on or after June 1, 1993, providing it doesn't cause additional cost to the Employer.

In the event it may become necessary to alter or amend or eliminate any portion of the Union's fringe benefits contributions, it is agreed that such alterations, modifications and/or eliminations revert to and become a part of the base wage rate, providing however, that such diversion does not change the total wage/fringe package on or after June 1, 1993, and providing there shall be no additional cost to the Employer. It is understood the terms of this provision are not applicable to Industry Advancement Fund contributions.

In the event an Employer fails to make the necessary fringe benefit contributions including Union Dues deductions and Industry Fund contributions, as stipulated in Section I titled "Wage and Fringe Rates," on or before the date required by Benefit Fund Trustees, the Union shall have the right to take whatever steps necessary to secure

16

compliance with this Agreement, any other provision hereof to the contrary not withstanding, and the Employer shall be liable for all costs for collection of payments due, together with Attorney's fees and such penalties as may be assessed by the Trustees of such respective fund(s). The Employers liability for payment under this Article shall not be subject to or covered by any grievance or arbitration procedure of any "No-Strike" clause which may be provided or set forth elsewhere in this Agreement.

### (b)  Fringe Benefit Submittals

All fringe benefits, in accordance with above schedule, are to be submitted by separate checks on or before the fifteenth (15th) of each month next succeeding the month in which work was performed as follows:

TO:  I and TT Pension Fund, International Union.

1.  Pension Fund:  Make check payable to I and TT Pension Fund.

2.  Masonry Fund:  Make check payable to IMI ($.10).

Enclose above two (2) checks in same envelope to I and TT Pension Fund, International Union of Bricklayers and Allied Crafts, 815 15th Street, N.W., Washington, D.C.  20005.

17

1.  Health and Welfare Fund:
    Make check payable to Building
    Trades Welfare for the
    Ohio Valley.

2.  Dues Check-Off:
    Make check payable to BAC
    Processing Office, 3974 Brown
    Park Dr., Suite A, Hilliard,
    OH  43026

3.  Industry Fund:
    Make check payable to CEA
    Industry Advancement Fund.

4.  Apprenticeship Fund:
    Make check payable to Brick-
    layers/Cement Masons Local #15
    Apprentice Fund.

Enclose above four (4) checks in
same envelope and mail to:

> I.U.B.A.C.
> Bricklayers/Cement Masons
> Local Union #15
> Room 416, Professional Bldg.
> Cleveland Avenue
> Fairmont, West Virginia 26554

(c)  <u>Foreman's Rate</u>

Foreman's rate shall be fifty cents
(.50) above the Journeyman's rate when
five (5) men or less are employed, and
shall be seventy-five cents (.75) above
the journeyman's rate when over five (5)
men are employed.

18

(d)  <u>Brick Saw Rate</u>

An employee operating a brick saw shall receive at least twenty-five cents (.25) per hour above the journeyman's rate, and at no time shall a saw man be required to perform continuous cutting without a rest period.

When saw work is started before the lunch period, the saw man shall receive the saw rate for a minimum for four (4) hours; if begun after the lunch period, he shall receive the saw rate for a minimum of four (4) hours.  The operator of a masonry saw shall be provided with all reasonable equipment necessary for his comfort and safety, including respirators and goggles.

<u>Section 3.</u>    <u>Shift Work</u>

When three (3) shifts are employed, the afternoon shift (3:00 P.M. to 11:00 P.M.) shall receive an additional ten cents (.10) per hour for working that shift; the midnight shift (11:00 P.M. to 7:00 A.M.) shall receive an additional fifteen cents (.15) per hour for working that shift.  When shifts are employed, the overtime rate shall start at 3:00 P.M. Friday to 7:00 A.M. Monday.

When two (2) ten hour shifts are employed, the second shift, known as the afternoon shift, shall receive an additional fifteen cents (.15) per hour for working that shift.

19

When for reasons beyond the control of the Employer, on any project, where primary shift-off hours are by customer request, and work cannot be performed during regular established working hours, the rate of pay shall be at the normal hourly straight time rate and shall be one dollar ($1.00) per hour above the established base rate. All time over the established eight (8) hours shall be paid at double the regular rate including the $1.00 increase.

The above mentioned clause shall only apply to projects where a pre-job conference has been held and then only by written permission from the Union.

## ARTICLE XIV
## APPRENTICES

<u>Section 1.</u>    <u>Apprentice Rate and Requirements</u>

Apprentices shall receive same fringes as journeymen. The minimum wage rates for apprentices shall be as follows:

| | |
|---|---|
| First Six Months | 50% of Journeyman Rate |
| Second Six Months | 55% of Journeyman Rate |
| Third Six Months | 60% of Journeyman Rate |
| Fourth Six Months | 70% of Journeyman Rate |
| Fifth Six Months | 80% of Journeyman Rate |
| Sixth Six Months | 90% of Journeyman Rate |

20

Every fifth (5th) employee who is covered by this Contract or every seventh (7th) employee on an aggregate basis, shall be an apprentice insofar as possible. Not until the Local Union No. 15 apprentices are employed, shall any contractor use an apprentice from another jurisdiction, and then only by permission of Local Union No. 15. It shall be the responsibility of the Employer to notify the Union when the ratio is reached.

An apprentice shall not be permitted to operate a saw during his first three (3) years of apprenticeship.

Section 2.    Apprentice Program

The responsibility of selecting and employing an adequate number of apprentices to insure a continued supply of skilled craftsmen shall be vested in a Joint Apprenticeship Committee composed of equal representation by the Union and Employer.

The Joint Apprenticeship Committee shall determine the ability and qualifications of each Employer to employ apprentices. The selection, placing and training of apprentices shall be vested in the Joint Apprenticeship Committee based on continue surveys to determine the work opportunities and the availability of skilled craftsmen.

21

# ARTICLE XV
## FRINGE BENEFIT FUNDS

<u>Section 1.</u>          <u>Health and Welfare Fund</u>

The Employer hereby agrees to contribute to the Building Trades Welfare Fund for the Ohio Valley, the sum of two dollars and fifty cents ($2.50) effective June 1, 1993 for each hour, or major portion thereof, paid hereunder by each employee covered by this Agreement.

By executing this Agreement, both the Employer and the Union unequivocally agree to be obligated under, and bound by each and every provision of the original Agreement and Declaration of Trust dated the 26th day of August, 1959, as amended, under which said Fund operates to the same extent and effect as though said Employer and Union had signed said Agreement and Declaration of Trust.

In addition to the wages herein provided, employers agree to make contributions to the Building Trades Welfare Fund for the Ohio Valley. Said Fund is created and administered by a Board of Trustees under the terms and conditions of an Agreement and Declaration of Trust. The benefits are payable under the terms of a master insurance policy purchased by said Fund. The Agreement and Declaration of Trust and said master insurance policy are, by reference, incorporated herein to the same extent and with the same effect as if herein set forth in full.

22

All signatories to this Collective Bargaining Agreement agree to be, and are herewith, bound by the terms of said Trust Agreement and said master insurance policy, to the same extent and with the same effect as though they were individual signatories to each of said instruments. All signatories hereto further acknowledge that they are aware of, understand and agree to each and every provision of said instruments; that, by executing this Collective Bargaining Agreement, adopt the Trustees of said Trust Fund as their own and agree to be bound by the decisions of said Trustees, of their successors, made in accordance with the authority granted said Trustees under the terms of said Trust instrument and master insurance policy.

### Section 2.    Pension Fund

The only agreement between the Employer(s) and Union parties to this Agreement regarding pensions or retirement for employees covered by this Agreement is as follows:

1.   (a) Commencing with the first day of June, 1993, and for the duration of the Agreement, and any renewals or extensions thereof, the Employer agrees to make payments to the Bricklayers and Trowel Trades International Pension Fund for each employee covered by this Agreement.

(b) For each hour or portion thereof, for which an employee receives

23

pay, the Employer shall make a contribution of one dollar and fifty cents ($1.50) per hour to the above named Pension Fund.

(c) For the purpose of this section, each hour paid for, including hours attributable to show-up time, and other hours for which pay is received by the employee in accordance with this Agreement, shall be counted as hours for which contributions are payable.

(d) For the purpose of this section, each hour paid for, including hours attributable to show-up time, and other hours for which pay is received by the employee in accordance with this Agreement, shall be counted as hours for which contributions are payable.

(e) Contributions shall be paid on behalf of any employee starting with the employee's first day of employment in a job classification covered by this Agreement. This includes, but is not limited to, apprentices, helpers, trainees, and probationary employees.

(f) The payments to the Pension Fund required above shall be made to the Bricklayers and Trowel Trades International Pension Fund, which was established under an Agreement and Declaration of Trust, dated July 1, 1972. The Employer hereby agrees to be bound by and to the said Agreement and Declaration of Trust, as though he had actually signed the same.

24

2.  The Employer hereby irrevocably designates as its representatives on the Board of Trustees such Trustees as are now serving, or who will in the future serve as Employer Trustees, together with their successors.  The Employer further agrees to be bound by all actions taken by the Trustees pursuant to the said Agreement and Declaration of Trust.

3.  All contributions shall be made at such time and in such manner as the Trustees require, and the Trustees shall have the authority to have an Independent Certified Public Accountant audit the payroll and wage records of the Employer for the purpose of determining the accuracy of contributions to the Pension Fund.

4.  If an Employer fails to make contributions to the Pension fund on or before the date required by the Trustees, the Union shall have the right to take whatever steps are necessary to secure compliance with this Agreement, any other provision hereof to the contrary notwithstanding, and the Employer shall be liable for all costs for collection of payments due together with attorney's fees and such penalties as may be assessed by the Trustees.  The Employer's liability for payment under this Article shall not be subject to or covered by any grievance or arbitration procedure of any "no-strike" clause which may be provided or set forth elsewhere is this Agreement.

25

5.  The Pension Plan adopted by the Trustees of said Pension Fund shall, at all time, conform with the requirements of the Internal Revenue Code so as to enable the Employer at all times to treat contributions to the Pension Fund as a deduction for income tax purposes.

### Section 3.    Union Dues Check-Off

The Employer agrees to deduct from the pay of each employee covered by this Agreement who has signed and given to the Employer a voluntary written authorization to do so, the following amounts:

### a) COMMERCIAL WORK:

| JOURNEYMEN | 6/1/93 | 6/1/94 | 6/1/95 | |
|---|---|---|---|---|
| Regular Pay | $ .96 | $ .99 | $1.01 | hrs pd |
| 1½x Reg Pay | 1.44 | 1.49 | 1.52 | "   " |
| 2x  Reg Pay | 1.92 | 1.98 | 2.02 | "   " |

| APPRENTICES | | | | |
|---|---|---|---|---|
| Regular Pay | .67 | .69 | .72 | "   " |
| 1½x Reg Pay | 1.00 | 1.04 | 1.07 | "   " |
| 2x  Reg Pay | 1.34 | 1.38 | 1.44 | "   " |

### b) INDUSTRIAL/REFRACTORY WORK:

| JOURNEYMEN | 6/1/93 | 6/1/94 | 6/1/95 | |
|---|---|---|---|---|
| Regular Pay | $ .99 | $1.02 | $1.04 | hrs pd |
| 1½x Reg Pay | 1.49 | 1.53 | 1.56 | "   " |
| 2x  Reg Pay | 1.98 | 2.04 | 2.08 | "   " |

| APPRENTICES | | | | |
|---|---|---|---|---|
| Regular Pay | .67 | .69 | .72 | "   " |
| 1½x Reg Pay | 1.00 | 1.04 | 1.07 | "   " |
| 2x  Reg Pay | 1.34 | 1.38 | 1.44 | "   " |

The Union Dues Check-Off deduction is to be mailed to Bricklayers/Cement Masons Local Union No. 15, Room 416, Professional Bldg., Cleveland Ave., Fairmont, West Virginia 26554, on or before the fifteenth (15th) day of each month for work performed the preceding month.

Section 4.          WV Building Trades Council Assessment

Effective June 1, 1993, the Employer shall deduct from each employee five (.05) cents for each hour worked. This deduction shall be mailed to Bricklayers/Cement Masons Local Union No. 15, Room 416, Professional Building, Cleveland Ave., Fairmont, West Virginia 26554, on or before the fifteenth (15th) day of each month and shall be used for the West Virginia Building and Construction Trades Council assessment. The Employer agrees to make such necessary Building Trades deductions after he has received signed written authorization from either the employee or the Local Union, to do so.

Section 5.          Affiliated Construction Trades Foundation (ACT)

Effective June 1, 1993, the Employer shall deduct from each employee twenty-five cents (.25) for each hour worked. This deduction shall be mailed to Bricklayers/Cement Masons Local Union No. 15, Room 416, Professional Building, Cleveland Ave., Fairmont, West Virginia 26554, on or before the fifteenth (15th)

27

day of each month and shall be used for the Affiliated Construction Trades Foundation. The Employer agrees to make such necessary ACT deductions after he has received signed written authorization from either the employee or the Local Union, to do so.

## ARTICLE XVI
## CONTRIBUTIONS TO FUNDS

In addition to wages herein provided, the Employer herein agrees to make contributions to all other funds provided for in this Agreement.

Each Fund is created and administered under an Agreement and Declaration of Trust and operated by a Board of Trustees as required by law. In some instances, benefits are payable under a master insurance policy purchased by the Fund. Each Agreement and Declaration of Trust and each such master insurance policy, where applicable, is incorporated herein by reference and is binding upon each signatory hereto to the same extent and with the same effect as if set forth herein in full.

All signatories to this Collective Bargaining Agreement, as well as those who may hereinafter become signatories hereto in any manner whatsoever,

(1) acknowledge that they are aware of and understand fully all terms and conditions of said documents incorporated herein by reference;

28

(2)    and that they accept the trustees of said Funds as their own and agree to be bound by their decisions; and that

(3)    said signatories are obligated to all the terms, provisions and conditions of said documents herein incorporated by reference.

## ARTICLE XVII
## INCREASED FUND CONTRIBUTIONS
## FROM BASE PAY

The Union may transfer wage increases granted under this Agreement to Health and Welfare, Pension, Apprenticeship, or other Funds. The Union will, at least sixty (60) days prior to the date an increase is effective, give written notice to the Construction Employers Association of North Central West Virginia, Inc., so that wage rates may be modified and such wage increase transferred to Health and Welfare, Pension, Apprenticeship, or other Fund.

## ARTICLE XVIII
## HOURS OF WORK - PAYROLL PERIOD
## REPORTING PAY - HOLIDAYS
## COFFEE BREAK - TEMPERATURE AND
## SHANTY FACILITIES

Section 1.        Hours of Work and
                  Overtime, Lunch Period

(a)  Eight (8) hours shall constitute a day's work and shall consist of

29

those hours that are predetermined by the General Contractor between 7:00 A.M. and 5:00 P.M. Once the job has started, changes in the predetermined eight (8) hour schedule may only be made by mutual agreement between the Masonry Contractor and the Union.

When an employee is working in an industrial plant, he shall comply with the plant's hours when asked to do so.

A predetermined thirty (30) minute lunch period between 11:30 A.M. and 12:30 P.M. shall be agreed upon between the Union and the Employer. If it is the practice of the general contractor on any job to call starting and quitting times by means of a whistle or other sounding device, employees covered by this Agreement will be governed by the sounding of such whistle or device. Otherwise, said employees will observe starting and quitting times as indicated in Section 1, paragraph (a). All starting and stopping time shall originate from shanty.

(b) Work Week and Overtime. Five (5) days shall constitute one (1) work week, Monday through Friday. No employee shall work more than eight (8) hours in any day unless such work is classified as overtime and paid for at one and one-half times the regular rate. The overtime schedule and applicable rates are as follows:

30

## OVERTIME - NEW CONSTRUCTION
### (INDUSTRIAL - COMMERCIAL)

After regular 8 hours  - 1½ Regular Rate
(First 2 hours up to 10 hours)

Saturday                         - 1½ Regular Rate
(First 10 hours)

Sunday                  - Double Regular Rate

Holidays                - Double Regular Rate
(when worked)

At no time will premium time be paid on premium time.

In the event any employee shall work more than two (2) hours over the determined shift in any one day, they shall be entitled to a one-half (1/2) hour paid lunch period. When any employee works more than ten (10) hours in any one day, they shall be entitled to a one-half (1/2) hour paid lunch period every four (4) hours thereafter.

At the beginning of each job, the foreman or job steward shall determine the exact amount of time required to reach the shed from the general work area, by pacing off this distance. This predetermined time shall be established for the employee to reach the shed at lunch break. Ten (10) minutes shall be allotted to clean up at quitting time. The Employer shall provide a secure area for tools, clothing and eating.

31

<u>Section 2.</u>      <u>Payroll Period and Payday</u>

(a)  Employers may withhold, where necessary, a reasonable amount of wages due, to enable them to prepare the payroll, not to exceed three (3) working days, with payday being no later than quitting time Friday.  Pay shall be distributed by the bricklayer foreman at least two (2) hours before the established quitting time.  In case of failure to pay by the stated time, the employee shall be paid waiting time at the regular time pay, provided, however, the Arbitration Committee considers it an unavoidable case.  If there is no work on Friday, the established payday, the men shall be paid by 12:00 o'clock noon.

(b)  Should any employee(s) be paid with an invalid check, he shall be paid an additional two (2) hours by the Employer for inconvenience, and shall thereafter be paid in cash.

(c)  Employees who are laid off, discharged or terminated for any reason shall be given thirty (30) minutes prior notice to pack their tools.  Should such layoff or discharge occur before noon, the employee shall receive not less than four (4) hours pay; if in the afternoon, he shall receive not less than eight (8) hours pay.  If an employee does not receive the wages due him at the time of layoff, he shall be paid waiting time at the straight time rate if kept waiting till the established quitting time; and additional waiting time shall be paid at

32

the overtime rate. This shall not include hours outside of regular working hours nor days on which banks are closed, except an initial penalty of two hours may be imposed after working hours on the day the pay was due.

(d) The Employer shall identify and give an accounting of all deductions on the stub of each pay check given to the employee. In addition to taxes deducted, other deductions to be identified are H&W, Pension, and Union Dues Check-Off.

(e) If an employee quits of his own accord, he shall be paid on the regular payday.

(f) Men must be paid for going from one job to another during working hours.

(g) In no case shall men be laid off to permit the stocking of a scaffold.

<u>Section 3.</u>   <u>Reporting Time and Pay</u>

(a) **Travel Expense:** When an employee reports for work and is not allowed to start work due to inclement weather, he shall be paid twenty-five dollars ($25.00) expenses. The employee must remain on the job for one (1) hour ready to work in order to qualify. Any employee who reports for work and for whom work is provided, shall be paid actual time worked, but not less than two (2) hours, weather permitting,

33

provided they remain available for work. It is further agreed that in the event an authorized agent of the Employer elects to send the the said employees home either before starting time or at any time within the specified one (1) hour period of any day wherein inclement weather prevails, those so involved shall therefore be entitled to and be paid the twenty-five dollar ($25.00) travel expense.

(b)  The superintendent or other authorized agent of the Employer and the Union Steward shall jointly determine, at any time during the first one (1) hour whether or not the weather conditions are such that the work can proceed.  Should any dispute arise in regards to the decision same shall be referred to the Bricklayers/Cement Masons office, and any employee who fails to comply with the decision of the joint representation shall not be entitled to such reporting time.

(c)  If work is started during the first one (1) hour, the employee shall receive the regular rate of pay for the time worked plus the first one (1) hour of reporting time.  If the job is started and work is discontinued within the first four (4) hours, the employee shall receive pay for actual hours worked, plus one (1) hour reporting pay (or part thereof), but in no event, to exceed four (4) hours.  After working more than four (4) hours, the employee shall receive pay for actual hours worked and shall not be entitled to reporting pay.

34

(d)   The employee must be notified two (2) hours before starting time that work for that day has been suspended, otherwise the employee will be entitled to one (1) hour reporting time on the day as specified above.

(e)  If an employee is to be transferred from one job to another and cannot be guaranteed that he will be put to work the following day, then he shall be paid off in full at that time.

Section 4.   Holidays

(a)  The following holidays are to be observed on the date so designated by the federal government and, with the exception of Christmas Day, are to be unpaid days:

New Year's Day, Memorial Day, Independence Day, Labor Day, Thanksgiving Day, Day after Thanksgiving and Christmas Day.

Any work performed on the above named holidays shall be paid for at the double time rate.

Veterans Day and/or Good Friday - by giving notice to his Employer no later than quitting time on the preceding evening, any employee covered by this Agreement may absent himself from work on either Veterans Day or Good Friday without prejudice.

(b)  Christmas Day shall be a paid holiday (8 hours) for all employees

35

governed by this Contract, and who are gainfully employed by a Contractor within this jurisdictional area. "Gainfully employed" shall mean, one payroll week prior to or one payroll week following Christmas Day.

(c) Should any of the above holidays fall on Saturday, the preceding day shall be observed and if it is Christmas Day, only, shall be paid (8 hours) as stipulated.

## Section 5.    Coffee Break

There shall be a 10-minute break in the morning in an 8-hour day and two (2) breaks in a 10-hour or more day. The first break is to be taken at the closest facility provided by the Employer within two and one-half ($2\frac{1}{2}$) hours from the established started time. The time for the breaks is to be set by the steward and foreman on the job.

This break period is not to be abused by employees. It shall be the responsibility of the foreman and steward to see that this privilege is not abused. Any employee who does abuse this privilege shall be subject to dismissal.

## ARTICLE XIX
## FOREMAN

(a) All foreman shall be representatives of management. The selection of foreman shall be entirely the responsibility of the Employer, it being understood that in the selection of such

36

foreman the Employer will give primary consideration to the qualified men available in the local area. After giving such consideration, the Employer may select such men from other areas. Foremen shall take orders from such individuals as may be designated by the Employer.

(b)  Any foreman under this Article must be a practical bricklayer and have complete charge of all masonry work done under the terms of this Agreement.  He alone, shall have the authority to hire, or terminate the services of any brick-layer.

(c)  When two (2) or more bricklay-ers are on the job, one shall be the foreman and shall be permitted to work with the tools of his trade so long as no more than eight (8) journeymen and/or apprentices are working.  As soon as there are nine (9) or more men working, the foreman shall no longer work with his tools.

(d)  A foreman may make saw cuts when eight (8) men are employed, includ-ing the foreman, but never in excess of one (1) hour in any work day.  At no time shall a foreman operate a saw for the purpose of stock piling cuts for future use.

(e)  In the event of the termina-tion of any bricklayer, the foreman shall arrange for the payment of his wages in accordance with aforesaid provisions.

37

(f)   A foreman shall not make a practice of calling starting or quitting time before or after those established times, calling for the line before the course is worked out, nor in any way using his position to interfere with the provisions of this Agreement.

(g)   No member shall be allowed to work under any foreman who is not a practical bricklayer or stonemason, according to the particular kind of work being performed.  This does not apply to a contractor who is a practical bricklayer or stonemason who supervises his own work.  Such foreman or contractors shall be required to contribute into the Welfare, Pension, Dues Check-Off, and Industry Fund.

## ARTICLE XX
## STEWARD

(a)   The Union reserves the right to place or replace a steward on any job in the jurisdiction of Local #15.  The steward shall be the first bricklayer called back to work in the event of any work stoppage of any type.

(b)   A foreman shall not terminate the services of the shop steward for performing his legitimate duties.

(c)   Under no circumstances shall a Union steward be laid off, discharged or transferred without the Employer first consulting the Union, followed by written notification and then only for good and just cause shall the Employer

38

dismiss the Union steward. If such action should arise, and the Union disagrees, then it shall immediately notify the Business Representative and the matter promptly referred to the Grievance and Arbitration procedure as provided. There shall be no strike or stoppage of work.

(d)  The steward shall take charge of any member receiving a serious injury or becoming sick.

(e)  The steward may demand to see the wages of any bricklayer, mason or foreman working on his job.

(f)  The steward shall not abuse his position in regards to a days work, however, he shall be given sufficient time to perform his duties.

## ARTICLE XXI
## BUSINESS MANAGER

The Business Manager of the Union, carrying proper credentials, shall be permitted to visit jobs during working hours to interview the Employer, steward or employees at work, but shall in no way interfere with or hinder job progress.

In the event the Employer does not control the ingress or egress on a project, the Employer shall make every effort cooperatively with the Business Manager to secure permission to inspect the job.

39

# ARTICLE XXII
# HIGH AND HAZARDOUS WORK – PREMIUM PAY
## SCAFFOLDS – SAFETY

### Section 1.    Scaffolding

(a)  Employers shall provide suitable scaffolds, handrailings and protection, all in compliance with the Federal Occupational Safety and Health Act (OSHA).   When other men are working above employees, overhead protection capable of resisting falling objects shall be provided, such protective covering to be not more than eight (8) feet above the platform or ground upon which the said employees are working.

(b)   All scaffolding must be at least four (4) feet six (6) inches wide, and at no time built higher than the wall upon which the employees are to work.  The employees shall build no wall beyond the height of four (4) feet six (6) inches except four (4) feet eight (8) inches may be laid with a hop scaffold.   Veneer work may be built to a height of five (5) feet.

(c)  A ladder, built in compliance with OSHA standards, shall be provided for access to scaffolds three (3) feet or more in height.   Where swinging scaffolds are used, they shall be built and hung in compliance with OSHA standards, including the required handrails, intermediate rails and toe boards.

(d)   Scaffold working platforms shall be six (6) inches below top of

40

masonry, except where not feasible.

(e) No employee shall be required to work in any place that is injurious to his health, either from gas, dust, or heat without a reasonable rest period to regain his working ability.

All work performed on a scaffold where its height is more than twenty-five (25) feet above the ground, or which is more than three (3) average stories high, shall be paid for at the regular hourly rate plus twenty-five (.25) cents per hour. On this kind of work, the premium pay shall <u>not</u> <u>apply</u> to partition work or outside wall furring when men are working off the floor.

### Section 2.  Stack Work

(a)  Definition:  "A chimney or stack, independent from a building, which rises more than twenty-five (25) feet above the ground. A chimney, flue or stack which rises more than twenty-five (25) feet above the exodus from the roof."

(b)  Premium Pay:  Twenty-five (.25) cents per hour in addition to the regular rate for work performed on (a) above.

### Section 3.  Work in Pairs

Bricklayers shall work in pairs during the erection of all tile, haydite and cement blocks or blocks of similar nature weighing over forty-four (44)

41

pounds.

### Section 4.    Mortar Boards

Mortar boards and materials shall be placed at convenient height and where needed by a mason.

## ARTICLE XXIII
## FIREBRICK

### Section 1.    Wage Rate

Any employee working as a fire brick journeyman or apprentice shall be paid the Refractory Rate as stipulated within ARTICLE XIII, Section 1., titled WAGES/FRINGES - PREMIUM PAY - APPRENTIC-ES- HOT WORK - SHIFT WORK.  The same fringes shall apply as for red brick.

### Section 2.    Saw Work

If there is a substantial dust factor involved where refractory brick are being laid, a separate shed shall be provided for the mixing of all refractory clay.  When necessary on refractory brickwork, a sweeper shall be on the job to keep floors, walks, runways and scaffolds free of dust and dirt and shall keep same properly wet down at all times.

No employee shall be allowed to operate a masonry saw which does not meet the necessary safety requirements set forth by OSHA and until it has been inspected by the state and/or federal safety inspector for proper safety

devices and provisions for the elimination of dust. No blocks shall be cut on a table model saw. The sizes of material to be cut will be left to the judgement of the steward. All saw blades used on the saw shall be of unbreakable material. The saw and blade used shall always be comparable to the material required to be cut. At no time shall a saw man be required to do continuous cutting without an adequate rest period.

When employees are cutting blocks of any kind, there shall be only one (1) man at a time doing the cutting. All employees cutting fire brick or refractory material shall be furnished respirators and goggles.

All necessary equipment and/or clothing, such as rubber gloves, rubber aprons, etc., shall be furnished by the Employer.

Section 3.        Hot Work - Rate and Conditions

(a)    All work where an employee cannot stay continuously at his work because of heat shall be considered hot repair.

All bricklayers engaged in hot work shall be given cooling off periods when necessary and shall be allowed at least one-half (1/2) hour cooling off period prior to the quitting time of the shift. Lemonade shall be furnished by the Employer on all hot work.

43

Double the regular rate shall be paid for all hot work.

(a)   Gloves, towels and all required safety equipment for "hot work" shall be furnished by the Employer.

<u>Section 4.</u>   <u>Shift Work</u>

When three (3) shifts are worked, each shift shall work seven (7) hours and be paid for eight (8) hours.  When two (2) shifts are worked, each shift will work seven and one-half (7 1/2) hours and be paid for eight (8) hours. This schedule pertains to work performed between 7:00 A.M. Monday and the established quitting time on Friday.

When three (3) shifts are employed, the afternoon shift (3:00 P.M. to 11:00 P.M.) shall receive an additional ten cents (.10) per hour for working that shift; the midnight shift (11:00 P.M. to 7:00 A.M.) shall receive an additional fifteen cents (.15) per hour for working that shift.  When shifts are employed, the overtime rate shall start at 3:00 P.M. Friday to 7:00 A.M. Monday.

When two (2) ten hour shifts are employed, the second shift, known as the afternoon shift, shall receive an additional fifteen cents (.15) per hour for working that shift.

<u>Section 5.</u> <u>Work Week and Overtime</u>

(a)  Five (5) days shall constitute one (1) work week, Monday through Fri-

44

day.  No employee shall work more than eight (8) hours in any day unless such work is classified as overtime and paid for at double the regular rate.  Any work performed between the established quitting time on Friday and the established starting time on Monday shall be paid at the overtime rate.

(b)  In the event any employee shall work more than two (2) hours over the determined shift in any one day, they shall be entitled to a one-half (1/2) hour paid lunch period.  When any employee works more than ten (10) hours in any one day, they shall be entitled to a one-half (1/2) hour paid lunch period every four (4) hours thereafter.

### Section 6.    Clay Boxes

Clay boxes and materials shall be placed at convenient height and where needed by a mason.

### Section 7.    Transportation of Tools and Clothing

All tools, tool boxes, levels and work clothes shall be transported by the Employer from farthest limit of bricklayers own transportation to vicinity of work and returned.

### Section 8.    Travel Pay

(a)  When a bricklayer is called or

45

sent out of his resident or home county, he shall receive travel time and transportation pay for his first trip on the job, and it shall be included in his first pay. When members of other Local Bricklayer/Cement Masons Unions are brought into this jurisdiction, they shall also receive pay for travel time and transportation for their first trip to the job, to be included in their first pay. They shall also be paid for travel time and transportation for their last trip from the job, upon being laid off or discharged, to their residence. Such pay to be included in their last pay. If they voluntarily quit prior to the job completion, they shall forfeit the travel time and transportation pay for their last trip home.

(b)    Travel pay scale under (a) above shall be as follows:

(1)    0-150 miles:  Four (4) hours pay plus transportation ten cents (.10) per mile.

(2) 150-225 miles: Eight (8) hours pay plus transportation ten cents (.10) per mile.

Any amount in excess of above shall be determined between the Employer and the employee, or the Union representative.

This provision shall apply to FIREBRICK work only.

46

## ARTICLE XXIV
## UNION RIGHTS - OTHER CONDITIONS - EXTENSION OF PRIVILEGES

### Section 1.    Notification of Union

Local Union No. 15 shall be notified at least three (3) days prior to the start of any masonry work on any job in this jurisdiction, with the exception of emergencies.  It shall be the responsibility of Management to see that this notification is given.

### Section 2.  Job Accessibility and Heat

Adequate heat shall be provided for bricklayers' shanty on the job when weather conditions require such heat. Heat for masonry saw operator when weather conditions require same.

### Section 3.  Extension of Privileges

Members of this Union shall be given any and all privileges that are extended to any other Union in any Contract that commences in 1993, and which is negotiated between the Union and the Construction Employers Association of North Central West Virginia, and which is not otherwise provided by this Agreement.

### Section 4.  Employment

(a)  Members of this Local Union No. 15 shall not accept employment with a Contractor who works with the tools of

47

the bricklayers' trade unless said contractor is a practical bricklayer, stonemason, marble mason, tilesetter, mosaic or terrazzo worker.

(b)   No bricklayer shall perform work for any employer who is not signatory to the current Bricklayer/Cement Mason Local #15 collective bargaining Agreement.

### Section 5.   Insurance and Physical Examination

Bricklayers shall not be compelled in insure themselves in any company to protect the Employer, nor to sign any agreement releasing the Employer from liabilities in case of accident.

### Section 6.   Dividing Work Between Employees

Bricklayers shall not divide the space on a wall to give each employee an equal amount of bricks or blocks to lay; rather they shall shift one way or another as required to complete each section of the course as simultaneously as possible.

### Section 7.   Mortar, Lines, Trig Brick, Speedleads, Deadmen, Etc.

(a)   On any wall exceeding nine (9) inches in thickness, a line shall be used on both sides of the wall.  Except in cases of obstruction on a wall, the employees shall not be required to raise

48

the line more than one (1) course at a
time.

(b)  No mortar shall be spread on
the wall until the line is up, except
the trig brick which may be set ahead of
the line and accurately adjusted after
the line is up. (This condition applies
to one (1) course, only).  This working
rule is not intended as a slowdown
tactic, and the line shall be raised
promptly and the trig set with no delay.

(c)    Speedleads,   corner   poles,
deadmen and any other instruments to
replace the plumb rule may be used at
the discretion of the Employer covered
by this Agreement, provided the instru-
ments are patented and the work is
erected by a Bricklayer.

(d)  No mortar tubs or pans shall
be used for the purpose of holding
mortar to be spread by bricklayers.

### Section 8. Principles of the Trade

The Employer and/or foreman shall
not require a bricklayer to destroy the
principles of this craft, such as racing
or skimping on the work, laying bricks
or blocks in a slipshod fashion, on edge
or dry, without mortar.  He shall not
require such acts as filling interior
wall with wood, the neglect of throwing
cross joints where work is exposed to
view, nor to perform any act which will
jeopardize the true interest in the
integrity of the craft.

49

## ARTICLE XXV
## MOST FAVORED NATIONS CLAUSE

Should the Union enter into any collective bargaining agreement or understanding applicable to work covered by this Agreement, with any other employer or employer group whereby the wages, fringe benefits or working conditions of such agreement or understanding are more favorable to the employers, then such terms and conditions of employment shall automatically supersede and replace the terms and conditions contained in this Agreement if the Association so elects. The parties may mutually agree upon local and/or project agreements modifying the terms of this Agreement.

The above applies to work normally done under this Agreement and does not apply to power plants, maintenance agreements or residential housing.

## ARTICLE XXVI
## INDUSTRY ADVANCEMENT FUND

WHEREAS: Recognizing the need for providing a means whereby Employer can facilitate and supplement the financing of its activities which include, but are not limited to, public relations, public education as applied to the construction industry, employer expenses incurred in the promotion of stability of relations between labor and management, maintaining facilities for arbitration and adjustment of grievances, health and welfare funds, and training programs,

50

also other Employer activity engaged in from time to time such as promotion of legitimate markets, standardization of contracts and research.

NOW THEREFORE, in the interest of providing a means whereby Employers may avail themselves of combined efforts in securing for themselves and their work-men just and honorable dealings with the public they serve.

Section 1. Employers working within the territorial jurisdiction of Bricklayers/Cement Masons Local Union No. 15 shall pay to the Industry Fund of Construction Employers Association of North Central West Virginia a sum to be in an amount equal to ten cents (.10) per hour worked per employee covered by the terms of this Agreement.

Said sum to be paid to trustees to be designated by the Construction Employers Association of North Central West Virginia; and to be used for the purpose of supplementing the administrative expenses incurred by the said Construction Employers Association of North Central West Virginia, Inc.

Payments to the Fund are due on or before the fifteenth (15th) of each month next succeeding the month for which said sum is payable.

Section 2. In the event the Employer fails to pay the sum due to the Industry Fund when same shall become due and payable as aforesaid, he shall be

51

considered delinquent and in breach of this Agreement, and as a penalty for such delinquency shall be assessed and required to pay to the Industry Fund, in addition to the sum currently due and payable, ten percent (10%) of said sum due for the first fifteen (15) days of delinquency, plus five percent (5%) for each successive month of delinquency or fraction thereof until paid. Delinquent employer shall also be liable for all reasonable expenses incurred by the Industry Fund directly attributable to the cost of collection of said delin-quent payments.

Section 3. This clause shall only be applicable to those Employers who work within the territorial jurisdiction of Bricklayers/Cement Masons Local Union No. 15. It is specifically understood that the Union will not be required nor called upon the enforce the collection of the foregoing Industry Fund. It is further understood and agreed that the Employer will save and hold the Union harmless from any litigation connected with or in any way affected by the foregoing Industry fund. The funds raised under the Industry Fund shall not be used for lobbying or sponsoring any legislation detrimental to the Union nor shall any such funds be prorated to any individual Employer during a strike or lockout. In no instance shall any of the foregoing funds be used for adver-tising or propaganda against the Union.

Section 4. The establishment of this program is subject to all applica-

52

ble federal and state laws.

Industry Fund payments are to be made to the Construction Employers Association of North Central West Virginia Industry fund. Make checks payable to CEA Industry Advancement Fund and mail to Bricklayers/Cement Masons Local No. 15, Room 416, Professional Building, Cleveland Avenue, Fairmont, West Virginia 26554.

## ARTICLE XXVII
## SAVINGS CLAUSE

Should any part hereof or any provision contained herein be rendered or declared invalid by reason of any existing or subsequently enacted legislation, or by a decree of a court of competent jurisdiction, any invalidation of such part of portion of the Agreement shall not invalidate the remaining portion hereof and all other provisions shall remain in full force and effect.

## ARTICLE XXVIII
## RESPONSIBILITIES OF THE PARTIES

During the term of this Agreement, there shall be no strike, work stoppage, slowdown, lockout or any other interference with or disruption of work because of any assignment of work by the contractor or subcontractor, jurisdictional dispute of any nature, hours of work, or for violation of any other part of this Agreement except as hereinafter provided. It shall not be a violation of this Agreement for employees to honor any

53

picket line which is sanctioned by the Building Trades in the appropriate jurisdiction for which such picket line is in effect.

The Union reserves the right to strike in any instance of nonpayment of wages and/or fringe benefits, after reasonable notice is given to the Employer by the Bricklayer/Cement Mason Business Representative.

No employee shall participate in any of the above illegal activities, and the Union will not authorize, instigate, aid or condone any such activity. Upon notification by the Employer that a violation of this Article exists or is threatened, the Union shall take necessary action to terminate or prevent such action or conduct which is in violation.

It is understood that the complete operation of the job, including any phase normally construed to be a management function, the direction of the working personnel, the right to hire, layoff and discharge for proper cause, or for other legitimate reasons, is vested exclusively in the Employer; provided that this duty will not be used for purposes of discrimination against any Union member.

With the exception of the Union's right to strike because of wage and/or fringe violations, as noted above, all possible efforts will be made by the Employer and the Union to settle any violation or dispute which may exist

54

before referring the matter to the Grievance and Arbitration procedure contained herein.

It is hereby understood that both parties signatory to this Agreement are comprised of reasonable and responsible citizens. Although general philosophies of the parties may differ upon occasion, it is understood and hereby declared that our aim is to provide the owner of each job with a quality structure for the least expense possible to him, while at the same time receiving for ourselves an honest and reasonable fee for services rendered.

It is agreed that the Union will provide the Association with copies of other collective bargaining agreements signed subsequent to the date of this agreement with employers who do not become signatory through the Association, and that the Association will provide the Union with copies of assignments of bargaining rights from employers entered into subsequent to the date of this agreement.

Neither party shall be considered to be in violation of this provision unless it fails to provide the necessary information within 72 hours of such signing excluding Saturdays, Sundays and Holidays.

## ARTICLE XXIX
## LEGALLY REQUIRED FUNDS

The Employer shall furnish neces-

55

sary proof within 48 hours of written request by the Business Agent that they are paying into Workers' Compensation, Unemployment compensation and any other fund required by law, in the event that the Local Union request such proof. The No-Strike Clause shall not pertain to this clause if any employer refuses or fails to show proof on request.

## ARTICLE XXX
## SUBSTANCE ABUSE/EEO/ADA POLICY

The Union, the Association and all individual Employers who agree to be bound by this Agreement also agree that every employee covered by this Agreement comply with a Substance Abuse Program as required by the users/customers of construction services in accordance with accepted standards in the interest of promoting a safe and drug-free workplace.

The Employer and the Union agree that they will not discriminate on the basis of race, color, religion, sex or national origin. The Union, the Association and all individual Employers who agree to be bound by this Agreement also agree to abide by all Executive Orders and subsequent Amendments thereto as well as all laws and regulations, both State and Federal, on Equal Employment Opportunity pertaining to nondiscrimination in employment in every respect.

The parties acknowledge their obligations to comply with the Americans with Disabilities Act and applicable

state handicap obligations under the law to make reasonable accommodations for disabled employees, as prescribed by law.

# ARTICLE XXXI
## POINTERS, CLEANERS AND CAULKERS

### Section 1.    Jurisdiction of Work

Pointing, Cleaning and Caulking shall consist of the pointing, cleaning, caulking and restoration of all types of masonry, concrete and curtain wall structures. The caulking of all window frames encased in masonry on brick, stone, cement on metal structures, including all grinding and cutting out on such work and all sand blasting, including operation at sandhoppers, steam cleaning, including operation of steam machines, hydro-air machines, 185 CFM compressors, all protective coatings and material injection, including operation of machine and spraying units.

The pointing, cleaning, caulking, weatherproofing, restoration and isolated masonry unit replacement of all buildings, grain elevators, storage silos and chimneys built of stone, brick concrete or pre-cast concrete. It shall include all cleaning, pressure cleaning, grinding, cutting out and sand blasting of all types of joints or surfaces, gunite work, material injection and protective coating work on same.

57

## Section 2.    Sand Blasting

(a)  When working on the **ground**, sand blasting men shall work as follows:

One Nozzle - 2 mechanics; Two Nozzles - 3 mechanics; Three Nozzles - 4 mechanics; Four Nozzles - 6 mechanics; Five Nozzles - 7 mechanics.

(b)  When working on **scaffolds**, sand blasting men shall work as follows:

One Nozzle - 2 mechanics; Two Nozzles - 3 mechanics; Three Nozzles - 5 mechanics; Four Nozzles - 6 mechanics, Five Nozzles - 7 mechanics.

This breakdown of men and nozzles is to aid in keeping the mechanics on the ground in visual contact with the mechanics working on the scaffolds and if any dispute shall arise concerning such safety, the Business Representative of Bricklayers/Cement Masons Local Union No. 15, shall be notified to settle such disputes.

The Employer agrees to furnish individual blasting hoods, with separate clean air supply.  They shall be either the "3 M" white cap or equivalent;  or the "Bullard" type hood with the "Hanki-son Catalite" compressed air purifier or equivalent.  Employer also agrees to furnish individual long cuff gloves for blasting;  mechanics are to be responsi-ble for reasonable care of such equip-ment.

## Section 3.   Safety Conditions

Safety equipment shall be furnished by the contractor at all times.

(a)  When working on hanging scaffolds, Employers must furnish each employee with an approved, tested safety belt with State Code and Occupational Safety and Health Act approved lanyard and safety line; said line to be a minimum of 5/8" nylon or equivalent to ground. When discharged, employee must return safety belt or be charged for same.

(b)  On washing down or steam cleaning jobs where acids, chemicals, or similar cleaning agents are used, all rigging shall be cable, nylon or polyplus.  On building over 100 feet in height from the lowest point at ground level, only power rigging scaffolds shall be used. Boatswain chairs to be used only at the discretion of the Business Representative from Bricklayers/Cement Masons Local Union No. 15.  When caulking exterior joints or frames from within the building, safety belts to be furnished to each employee.  When using stack brackets or boatswain chair, Pointer, Cleaner and Caulkers will receive ninety-five cents ($.95) per hour additional.

## Section 4.   Working Rules

When Pointer, Cleaner, Caulkers are employed, contractors shall pay for the sharpening of all tools required for the work.  Tools supplied by men shall be

59

pointing keys, mash hammers, crescent wrenches, hawk boards, trowels and hand chisels, which will be exchanged by Employer for sharp chisels when they become dull. Tools supplied by contractor and taken off the job by employees, the same shall be deducted from his weekly pay.

All other terms and conditions shall be those as covered within the context of the 1993-1996 Bricklayers/-Cement Masons Local Union No. 15 Collective Bargaining Agreement as negotiated by and between the respective parties.

The provisions of this ARTICLE are applicable only to the restoration and/or repair, etc., of existing masonry. They are not applicable in any way to any aspect of new masonry construction or new masonry additions to existing structures.

The applicable hourly rate(s) of pay for all work to be performed under this ARTICLE shall be those as stipulated within the context of work classifications as outlined under ARTICLE XIII, Section 1., within this Collective Bargaining Agreement.

Pointers, Cleaners and Caulkers shall not divide the work on a wall to give each employee an equal amount of work to do, rather they shall shift one way or another as required to complete each section of the work as simultaneously as possible. Each employee

shall give a fair days work for a fair days pay. Any dispute arising as to the interpretation, application or claimed violation of any provision of this Section, the dispute shall be settled by the Foreman, Job Steward and Business Manager of Bricklayers/Cement Masons Local Union No. 15.

## ARTICLE XXXII
## DURATION AND WITNESSETH

This Agreement shall become effective June 1, 1993 and remain in effect through May 31, 1996. It shall continue in effect from year to year thereafter unless notice is given in writing at least thirty days (30) prior to expiration, but not more than sixty five (65) days prior to May 31, 1996.

This Agreement may be amended at any time by mutual consent of both parties. Any amendment shall be in writing starting its effective date and be executed in the same manner as this Agreement.

CONSTRUCTION EMPLOYERS ASSOCIATION
OF NORTH CENTRAL WEST VIRGINIA, INC.

L. Robert Worcester, Executive Director


James E. Brown, Chairman


Robert G. Marks, Committeeman


James J. Dixon, Committeeman

ARBITRATION BOARD OF
BRICKLAYERS/CEMENT MASONS
LOCAL UNION NO. 15
FAIRMONT, WEST VIRGINIA

_Leroy E. Hunter_

Leroy E. Hunter, Director

_F. A. Cochran_

Frank A. Cochran, President Local No. 15

_Johnny M. Barkley_

Johnny M. Barkley

_Herbert F. Smith_

Herbert Smith

_Billy Joe Smith_

Billy Joe Smith

63

*McCORMICK TILE*

292197

15WV ①

## ACCEPTANCE OF AGREEMENT
### (Non-Association Employer)

In signing this Acceptance of Agreement, the undersigned firm does hereby authorize <u>the Applicable Contractors Association</u> as its collective bargaining representative for all matters contained in or pertaining to the current and any subsequent approved labor agreements between the contractor's association and Bricklayers and Allied Crafts District Council and its affiliated Local Unions 1, 5, 6, 9, 11, and 15 of WV. In doing so, the undersigned firm agrees to comply with and be bound by all of the terms and conditions contained in said current and subsequent approved labor agreements. This authorization, in compliance with the current approved labor agreement, shall become effective on the 1st day of June, 1993. It shall remain in effect until terminated by the undersigned employer giving written notice to <u>the applicable Contractors Association</u> and to Bricklayers and Allied Crafts District Council at least 60 days but not more than 95 days prior to the current anniversary date of the applicable labor agreement.

The employer agrees to recognize the Bricklayers and Allied Crafts District Council as the collective bargaining agent for all employees performing construction work as defined in the Collective Bargaining Agreement coming within the jurisdiction of the Bricklayers and Allied Crafts District Council on all present and future jobs sites.

<u>McCormick Tile</u>
Name of Firm

<u>PO Box 104 Alum Creek WV 25003</u>
Address

Signed for the Employer:

<u>Rick McCormick</u>
name

<u>Rick McCormick</u>
signature

<u>Owner</u>
title

<u>3-31-95</u>
date

<u>304 756 3657</u>
telephone

<u>304 756-1030</u>
fax

Signed for by the District Council of West Virginia:

<u>Terry Hunter</u>
signature

<u>Director</u>
title

<u>3-31-95</u>
date

<u>304-363-9250</u>
telephone

<u>304 363-3470</u>
fax

WV9314

A.

B, CM

WV9314 ✓

15WV   A∅, A1, A2

304 367 0126    P.1

## ARTICLE XIII
### WAGES/FRINGES - PREMIUM PAY-
### APPRENTICES - HOT WORK - SHIFT WORK

#### Section 1.   Wage and Fringe Rates

**BRICKLAYERS/CEMENT MASONS LOCAL NO. 15:**
**(COMMERCIAL)**

9014 / A0

| (a) | 6/1/93 | 6/1/94 | 6/1/95 |
|---|---|---|---|
| Base Rate | $19.55 | $ +.75 | $ +.50 |
| H & W | 2.50 | 2.50 | 2.50 |
| Pension | 1.50 | 1.50 | 1.50 |
| App. Fund | .17 | .17 | .17 |
| IMI | .10 | .10 | .10 |
| Ind. Fund | .10 | .10 | .10 |
| | $23.92 | $24.67 | $25.17 |

**BRICKLAYERS/CEMENT MASONS LOCAL NO. 15:**
**(INDUSTRIAL)**

9010/A0

| | 6/1/93 | 6/1/94 | 6/1/95 |
|---|---|---|---|
| Base Rate | $20.47 | $ +.75 | $ +.50 |
| H & W | 2.50 | 2.50 | 2.50 |
| Pension | 1.50 | 1.50 | 1.50 |
| App. Fund | .17 | .17 | .17 |
| IMI | .10 | .10 | .10 |
| Ind. Fund | .10 | .10 | .10 |
| | $24.84 | $25.59 | $26.09 |

**BRICKLAYERS/CEMENT MASONS LOCAL NO. 15:**
**(REFRACTORY WORK)**

| | 6/1/93 | 6/1/94 | 6/1/95 |
|---|---|---|---|
| Base Rate | $20.97 | $ +.75 | $ +.50 |
| H & W | 2.50 | 2.50 | 2.50 |
| Pension | 1.50 | 1.50 | 1.50 |
| App. Fund | .17 | .17 | .17 |
| IMI | .10 | .10 | .10 |
| Ind. Fund | .10 | .10 | .10 |
| | $25.34 | $26.09 | $ 26.59 |

#### Section 2:  Industrial

**Note:**  Industrial Construction

The wage/fringe benefit package as listed

Case 1:07-cv-00625-ESH   Document 3-2   Filed 07/18/2007   Page 72 of 74

WV9314

15WV

B,CM

RECEIVED JUL 19 1993

# M E M O R A D U M

TO:     ALL CEA CONTRACTORS UTILIZING
        I.U.B.A.C. BRICKLAYERS & CEMENT MASONS #15

FROM:   L. ROBERT WORCESTER

DATE:   MAY 28, 1993

                RE:  TERMS  &  CONDITIONS  OF  CONTRACT
                     SETTLEMENT FOR BRICKLAYERS & CEMENT
                     MASONS   #15   1993-96   COLLECTIVE
                     BARGAINING AGREEMENT

     Please be advised of the terms and conditions which have been
agreed  to  between  contractor  representatives  of  Construction
Employers Association of NCWV, Inc. and Bricklayers/Cement Masons
Local #15 as follows:

A)  **ARTICLE XXVIX. CONTRACT DURATION:**

    Three years effective June 1, 1993 thru May 31, 1996.

B)  **ARTICLE XIII. WAGE & FRINGE RATES. SECTION 1:**

| EFFECTIVE DATES: | 6/1/93 | 6/1/94 | 6/1/95 |
|---|---|---|---|
| Base Rate | $19.90 | $ +.75 | $ +.50 |
| H & W | 2.50 | | |
| Pension | 1.50 | | |
| Apprentice Fund | .17 | | |
| IMI | .10 | | |
| Industry Fund | .10 | | |

NOTES:  Dispersion of the monetary amounts for 1994 and 1995
        have not been determined at this time.

Throughout the duration of this Agreement, for all projects
for which the specifications include predetermined wage and/or
fringe benefit rates, such rates shall remain in effect for
the duration of the project, but shall not extend beyond the
normal expiration date (May 31, 1996) as stated within this
Agreement.

...herein for industrial utilized for all maintenance, repair, replacement and renovation work to be performed within various Industrial Plants as encompassed throughout the geographical jurisdiction of the Bricklayers/Cement Masons Local Union No. 15. All Industrial Construction to be performed under this Agreement is applicable to that work that is primarily within the recognized and traditional jurisdiction of the Bricklayers/Cement Masons Local Union No. 15 and shall be performed in accordance with the terms of this Agreement.

Brick/C.M. #15 Contract
May 28, 1993
Page 2

C)   ARTICLE XV, FRINGE BENEFIT FUNDS, SECTION 3:

UNION DUES CHECK-OFF:

The Employer agrees to deduct from the pay of each employee covered by this Agreement who has signed and given to the Employer a voluntary written authorization to do so, the following amounts:

COMMERCIAL - effective 6/1/93 thru 5/31/94
          $ .96 per hour paid at the regular rate of pay
          $1.44 per hour paid at 1½ times the regular rate of pay
          $1.92 per hour paid at 2  times the regular rate of pay

INDUSTRIAL - effective 6/1/93 thru 5/31/94
          $ .99 per hour paid at the regular rate of pay
          $1.49 per hour paid at 1½ times the regular rate of pay
          $1.98 per hour paid at 2  times the regular rate of pay

APPRENTICES - COMMERCIAL/INDUSTRIAL - effective 6/1/93-5/31/94
          $ .67 per hour paid at the regular rate of pay
          $1.00 per hour paid at 1½ times the regular rate of pay
          $1.34 per hour paid at 2  times the regular rate of pay

D)   ARTICLE XVIII, REPORTING PAY, SECTION 3:

When an employee reports for work and is not allowed to start work because of inclement weather, he shall be paid twenty-five dollars ($25.00) travel expense. The employee must remain on the job for one (1) hour ready to work in order to qualify. It is further agreed that in the event an authorized agent of the Employer elects to sent the said employees home either before starting time or at any time within the specified one (1) hour period of any day wherein inclement weather prevails, those so involved shall therefore be entitled to and be paid the twenty-five dollar ($25.00) travel expense.

E)   **ARTICLE XXIV, UNION RIGHTS, SECTION 5:** (REVISED)

**INSURANCE AND PHYSICAL EXAMINATION** –

Bricklayers shall not be compelled to insure themselves in any company to protect the Employer, nor to sign any agreement releasing the Employer from liabilities in case of accident.